**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARK KOERNER,**<br>            **Plaintiff,**<br><br>            v<br>**RAYME HANKINS, EAGLE PIPELINE**<br>**CONSTRUCTION, INC.,  ELKHORN**<br>**CONSTRUCTION, INC.** and **ELKHORN**<br>**CONSTRUCTION, INC.** *trading and doing*<br>*business as* ELKHORN PLANT CONSTRUCTION,<br>INC.,<br>            **Defendants.** | )<br>)<br>)<br>)  **2:11-cv-492**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OPINION AND ORDER OF COURT</u>

Pending now before the Court are three cross-motions for partial summary judgment:

DEFENDANT RAYME HANKINS' MOTION FOR PARTIAL SUMMARY JUDGMENT

(Document No. 18); PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS

TO SCOPE OF EMPLOYMENT OF DEFENDANT, RAYME HANKINS (Document No. 21);

and the MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS EAGLE PIPELINE

CONSTRUCTION, INC., ELKHORN CONSTRUCTION, INC. AND ELKHORN

CONSTRUCTION, INC. t/d/b/a ELKHORN PLANT CONSTRUCTION, INC. (Document No.

25).  The parties filed their respective Concise Statements of Material Fact ("CSMF's") and

appendices (Document Nos. 19, 23, 24, 27, 28), although Defendants (collectively

"Eagle/Elkhorn") failed to file responses to the CSMF's filed by the other parties.  The motions

have been thoroughly briefed (Document Nos. 20, 22, 26, 31, 34, 35, 36) and are ripe for

disposition.

Procedural Background

      This case arose out of an automobile accident caused by a welding rig truck driven by Defendant Rayme Hankins.  The key issue, at this stage of the case, is whether Hankins was within the scope of his employment at the time, such that Plaintiff Mark Koerner can recover damages from Hankins' employer, Eagle/Elkhorn.  The parties have bifurcated discovery in this case, with Phase 1 limited to the "scope of employment" issue.  ADR has also been postponed pending resolution of the "scope of employment" issue.  The parties have developed a thorough evidentiary record.

      Whether an individual has acted within the scope of his employment is typically a question of fact for a jury.  However, the issue can be decided as a matter of law where the facts and inferences drawn from the complaint are not in dispute.  *Swaney v. Jordan*, 2011 WL 485969 *6 (W.D. Pa. 2011).  On January 5, 2012 the Court held a status conference to explore whether the parties believed that there were issues that might prevent resolution of the pending motions as a matter of law.  Counsel for all parties represented that there were no material disputes regarding the underlying facts.  After consultation with their respective clients, counsel reported to the Court that they desired a ruling on the pending motions.

Factual Background

      A.  The Terms of Hankins' Employment

      Some welders are transient workers, who travel around the country to find available jobs.  Defendant Hankins is a resident of Texas.  On June 3, 2010, he became employed as a pipeline welder by Eagle/Elkhorn[1] and executed a New Hire Assignment Form.  Eagle/Elkhorn constructs

---

[1] The corporate Defendants are related and employees can "float" between the various subsidiaries.  It is unclear which subsidiary specifically employed Hankins on the day of the accident.

and installs natural gas pipelines.  Hankins was paid $31 per hour, commencing from the time he

arrived on the job site each day.  Hankins also received a per diem allocation of $100.00 to offset

costs for lodging, meals and living expenses while working away from home.  He was assigned

an Employee-Owner Handbook which reflected, in relevant part:  "It is each employee's

responsibility to get to the job location as assigned."

Hankins and Eagle/Elkhorn also entered into a Rental Agreement for Welding Rigs ("Rig

Rental Agreement").  The Agreement defined a "Welders Minimum Tool List" which included a

"truck."  Hankins owned a truck and welding rig suitable for performing welding operations.

Hankins was required to maintain automotive insurance which named Eagle/Elkhorn as an

additional insured.  Hankins was entitled to receive rent of $16 per hour "for each hour of use of

the Rig on the Job."  It was contemplated that the Rig would be used primarily by Hankins in

connection with his duties as a welder.  Hankins was paid the same number of hours each day for

his welding work on the job and for the rental of his rig.

In the Rig Rental Agreement, Hankins agreed to lease and maintain the welding rig to

Eagle/Elkhorn in a fully stocked condition.  Restocking of supplies was to be performed "at

Lessor's expense or on his own time" unless it could be accomplished during the workday

without undue interruption.  The Agreement provides that "Lessor is not entitled to be

compensated as an Elkhorn employee for performing Lessor's duties as set forth in the Rig

Rental Agreement."  Paragraph 5 of the Rig Rental Agreement governed "Rig Availability":

> Lessor will have the Rig available at 7:00A.M. or at the start of each day for
> which the Rig is to be used.  Lessor will make the Rig available as part of
> Lessor's obligations per the Rig Rental Agreement, and not as part of the Lessor's
> duties for Elkhorn as an employee.

In late January 2010, Hankins completed his welding work on a project in West Virginia

known as XTO.  He was then assigned to the Kahuna job, a pipeline project in Butler County,

Pennsylvania that was anticipated to last for approximately one month.  Hankins was paid for the time required to drive his truck and welding rig from the XTO job to the Kahuna job.  For the Kahuna job, Hankins used a welding rig that was located in the bed of his pickup truck.  Hankins owned a second welding rig that was mounted on a sled which made it easier to maneuver on steep hillsides.  It was left at the XTO job site in West Virginia.

Welders typically work their welding rigs along the pipeline in forty foot increments during the work day.  On many jobs, welders are instructed to report each day to a different worksite along the pipeline.  However, because the Kahuna job was relatively small, the welders were instructed to meet each day at a central location, known as the "well pad."  From the well pad, the welders were then directed to their respective locations along the Kahuna pipeline.

The customary start time for work was 7:00 a.m.  Welders generally work a ten hour day. If a workday was cancelled due to inclement weather, welders were paid "show up time," which consisted of two hours of labor and two hours of rig rental, in addition to their $100 per diem.  If the start time for a workday was delayed, welders still got paid as if the day had started at 7:00 a.m., regardless of the time they actually arrived at the job site.

Hankins was responsible for making his own lodging arrangements.  The company did not dictate where he stayed.  He chose to stay at a hotel which was located approximately twenty (20) miles from the Kahuna job site.  Most of the welders and other employees stayed at the same hotel or at a hotel across the street, although some employees stayed at various locations.

B.  The Day of the Accident

Early in the morning of February 1, 2010, Hankins received a phone or text message from job foreman Wally Garcia that the start time had been pushed back until 8:00 a.m. due to

4

inclement weather.  Hankins relayed this message to the other welders, using his company cell phone.

The accident occurred at approximately 7:44 a.m., as Hankins was en route from his hotel to the job site but still five to ten miles away.  Hankins lost control of his truck at a bend in the road, crossed the center line, and collided with Plaintiff Mark Koerner's vehicle.  Koerner was taken by ambulance to the hospital.  Hankins was not injured.

Following the collision, Hankins notified the project superintendent, Michael Walton. The company safety director, John Michael Mathews, subsequently arrived at the accident scene, interviewed Hankins, and took photographs.  Later, Mathews accompanied Hankins to his hotel and subjected him to a drug test.  Mathews suspended work at the Kahuna pipeline site for the day.  All employees, including Hankins, received "show up time" compensation for the day.


## Legal Analysis

The parties agree that Pennsylvania law applies.  In *Conn v. United States*, 376 Fed. Appx. 239 (3d Cir. 2010), the Court of Appeals for the Third Circuit held that Pennsylvania has adopted the principles set forth in Restatement (Second) of Agency §§ 228 and 239 to govern the "scope of employment" analysis.[2]

Restatement § 228(1) reflects the general rule that: "[c]onduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master...."  "[N]o single factor determines whether or not a person is acting within the scope of his employment; the totality of the circumstances must be considered."

---

[2] Pennsylvania has not yet adopted the Restatement (Third) of Agency.  *Vine v. State Employees' Retirement Bd.*, 956 A.2d 1088 (Pa. Commw. 2008).

*Simpson v. United States*, 484 F. Supp. 387, 394 (W.D. Pa. 1980) (citing *Winward v. Rhodewalt*, 198 A.2d 623 (1964)).

As explained in *Conn*: "in the context of automobile accidents, the Pennsylvania Supreme Court has been clear that in order for respondeat superior liability to attach, either the automobile must have been under the master's actual or potential control at the time of the accident, or the use of the automobile must have been 'of such vital importance in furthering the business of the master that the latter's actual or potential control of it at that time and place may be reasonably inferred.'" 376 Fed. Appx. at 241 (citations omitted). Restatement (Second) of Agency § 228 Comment (c) further explains: "As stated in Section 220, one is a servant only if, as to his physical conduct in the performance of the service, he is subject to the control or to the right to control of the master. Hence, there is no liability for the conduct of one who, although a servant in performing other service, is doing work as to which there is no control or right to control by the master."

The *Conn* Court also cited and relied on Restatement (Second) of Agency § 239 illustration 4, which provides, in relevant part:

> In going to a place at which he is to perform work for the master, A drives his own car, carrying thereon necessary tools and materials belonging to the master. In the absence of evidence that A owes P any duty of obedience in the details of operating the automobile, such driving is not within the scope of employment.

*Id.* at 242 n.1. *See also* Restatement (Second) of Agency § 229, comment d (noting that it is essentially the employee's "own job of getting to or from work"); *Williams v. Rene*, 72 F.3d 1096, 1100 (3d Cir. 1995) (recognizing general rule under Virgin Islands law that "employees are not within the scope of their employment while traveling to and returning from work").

In *Conn*, the question was whether an employee was within the scope of her employment when she was en route to pick up her daughter from school after the work day had ended. The

Court of Appeals reversed the district court and concluded that the employee was <u>not</u> within the scope of her employment at the time of the accident.  The Court of Appeals reasoned that driving was not the type of activity the employee was hired to perform; that she was on a personal errand; that the crash occurred after the end of the workday, and therefore, was not within the time and space limits of her employment; that she was not acting out of a purpose to serve her employer; and that her vehicle was not under the actual or potential control of the employer.  *Id*. at 241-42.  In reaching its conclusion, the Court expressly stated that cases interpreting the "more expansive standard" used to determine "course of employment" under the Pennsylvania Workmen's Compensation Act are not applicable.  Thus, Koerner's reliance on exceptions to the "coming and going rule" which developed in the Workers Compensation context is misplaced.

Applying these legal principles to the facts of this case, the Court concludes that Hankins was not within the scope of his employment at the time of the accident.  It is clear that Hankins' duties as an employee commenced only at and after the time he arrived at the well pad on the Kahuna pipeline site.   As clearly set forth in the Handbook:  "It is each employee's responsibility to get to the job location as assigned."  Hankins was paid on an hourly basis for both his labor and rig rental, which commenced when he arrived at the job site.

Hankins was employed to be a welder, not a driver.  The workday on February 1, 2010 had not yet started.  The accident occurred while Hankins was en route to the Kahuna job site, but still five to ten miles away.  Thus, it was not within the time and space parameters of his employment.  The company did not dictate where Hankins stayed and exercised no control over Hankins' activities while away from the job site.  Accordingly, none of the factors set forth in the Restatement (Second) of Agency have been met.

Restatement (Second) of Agency § 239 illustration 4, is quite similar in that Hankins was "going to a place at which he is to perform work for the master"; drove his own vehicle; carried his own necessary tools and materials; and did not owe Eagle/Elkhorn "any duty of obedience in the details of operating the automobile."  The factual situation in this case is actually further beyond the scope of employment than Illustration 4 because Hankins – not the employer – owned the tools and materials that were being transported.

Plaintiff and Hankins argue that transportation of the welding rig to/from the job site each day was of "vital importance" or a "reasonable necessity" to Eagle/Elkhorn such that Hankins' commute served at least a dual purpose.  The Court cannot agree.  Regardless of the benefit which Eagle/Elkhorn derived from the transportation of the truck and welding rig to and from the job site each day, such benefit was provided by Hankins in his role as the <u>lessor</u> of the rig, and not in his role as an <u>employee</u>.  *See* Rig Rental Agreement ¶ 5 ("Lessor will make the Rig available as part of Lessor's obligations per the Rig Rental Agreement, and not as part of the Lessor's duties for Elkhorn as an employee.")  Thus, the transportation of the welding rig to and from the hotel was not "actuated, at least in part, by a purpose to serve the master...."  Indeed, the Rig Rental Agreement appears to have been specifically designed to shield Eagle/Elkhorn from respondeat superior liability while its welders were in transit to and from the work site.

<u>Conclusion</u>

The Court concludes that Hankins was not within the scope of his employment at the time of the accident.  Accordingly, the Eagle/Elkhorn Defendants may not be held vicariously liable and they will be dismissed from the case.  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARK KOERNER,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v** | )   **2:11-cv-492** |
| **RAYME HANKINS, EAGLE PIPELINE** | ) |
| **CONSTRUCTION, INC., ELKHORN** | ) |
| **CONSTRUCTION, INC.** and **ELKHORN** | ) |
| **CONSTRUCTION, INC.** *trading and doing* | ) |
| *business as* ELKHORN PLANT CONSTRUCTION, | ) |
| INC., | ) |
| **Defendants.** | |

<u>**ORDER OF COURT**</u>

AND NOW, this 30th day of January 2012, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that DEFENDANT RAYME HANKINS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Document No. 18) is **DENIED**; PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO SCOPE OF EMPLOYMENT OF DEFENDANT, RAYME HANKINS (Document No. 21) is **DENIED**; and the MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS EAGLE PIPELINE CONSTRUCTION, INC., ELKHORN CONSTRUCTION, INC. AND ELKHORN CONSTRUCTION, INC. t/d/b/a ELKHORN PLANT CONSTRUCTION, INC. (Document No. 25) is **GRANTED** and the Eagle/Elkhorn Defendants are dismissed from this case.

Counsel for Plaintiff and Defendant Hankins shall jointly submit a revised proposed Case Management Order on or before February 13, 2012.

9

The caption of this action is hereby amended a follows:

| | |
|---|---|
| **MARK KOERNER,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v** | ) **2:11-cv-492** |
| **RAYME HANKINS** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:  **Erin K. Rudert, Esquire**
Email: erudert@edgarsnyder.com
**Todd Berkey, Esquire**
Email: tberkey@edgarsnyder.com

**Daniel R. Bentz, Esquire**
Email: dbentz@mooclaw.com

**Gerard J. Cipriani, Esquire**
Email: gcipriani@c-wlaw.com
**Rosemary A. Marchesani, Esquire**
Email: rmarchesani@c-wlaw.com